**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**YVONNE ROYALTY,**

       **Plaintiff,**                 **CIVIL ACTION NO. 17-cv-11024**

       **v.**                            **DISTRICT JUDGE VICTORIA A. ROBERTS**

**COMMISSIONER OF**            **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

       **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Yvonne Royalty seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 16) and Defendant's Motion for Summary Judgment (docket no. 19). Plaintiff has also filed a reply brief in support of her Motion for Summary Judgment. (Docket no. 20.) The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 4.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

**I.      RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 16) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 19) be **GRANTED**.

## II. PROCEDURAL HISTORY

Plaintiff protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income on March 26, 2014, alleging that she has been disabled since September 1, 2012, due to osteoarthritis, type 2 diabetes, hypertension, depression, osteopenia, and carpal tunnel syndrome. (TR 101-02, 157-64, 186.) The Social Security Administration denied Plaintiff's claims on August 28, 2014, and Plaintiff requested a *de novo* hearing before an Administrative Law Judge (ALJ). (TR 71-102, 111.) On December 4, 2015, Plaintiff appeared with a representative and testified at a hearing before ALJ Paul W. Jones. (TR 24-70.) The ALJ subsequently issued an unfavorable decision on December 21, 2015, and the Appeals Council declined to review the ALJ's decision. (TR 1-5, 10-19.) Plaintiff then commenced this action for judicial review, and the parties filed cross motions for summary judgment, which are currently before the Court.

## III. HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 16 at 5-11) and the ALJ (TR 12-19) have set forth detailed, factual summaries of Plaintiff's medical record and the hearing testimony. Defendant concurs with Plaintiff's recitation of the facts to the extent it is consistent with the ALJ's and adopts the ALJ's recitation of the facts. (Docket no. 19 at 5.) Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies between these recitations of the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

### IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 1, 2012, and that Plaintiff suffered from the following severe impairments: degenerative disc disease, osteoarthritis, knee arthritis, diabetes and peripheral neuropathy, obesity, right thumb degenerative changes, high blood pressure, osteopenia, gastroesophageal reflux disease (GERD), carpal tunnel syndrome, and diverticulosis. (TR 12.) The ALJ also found that Plaintiff's history of chronic obstructive pulmonary disease and emphysema, carpal tunnel syndrome, and mood disorder were non-severe impairments. (TR 16.) Additionally, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 16-17.) The ALJ then found that Plaintiff had the following residual functional capacity (RFC):

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can never climb ladders, ropes or scaffolds; occasionally crawl, crouch, kneel, stoop, climb ramp[s] and stairs; frequently balance; frequently handle objects with the right dominant hand; with only frequent exposure to vibration and hazards.

(TR 17-19.) Subsequently, in reliance on the vocational expert's (VE's) testimony, the ALJ determined that Plaintiff was capable of performing her past relevant work as a home care manager/housekeeper and as a telemarketer. (TR 19.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from September 1, 2012, through the date of the decision. (TR 10, 19.)

### V. LAW AND ANALYSIS

#### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining

whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

## B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

## C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material

5

evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and/or remanded under sentence four because (1) the ALJ failed to apply Social Security Ruling (SSR) 02-1p in evaluating Plaintiff's impairments under Listing 1.04A or in assessing Plaintiff's RFC; and (2) the ALJ's assessment of Plaintiff's credibility is not supported by substantial evidence. (Docket no. 16 at 2, 18-28.)

### 1. The ALJ's Consideration of Plaintiff's Obesity

Plaintiff argues that the ALJ failed to apply SSR 02-1p in evaluating the effects of Plaintiff's extreme obesity when evaluating her impairments under Listing 1.04A and in assessing Plaintiff's RFC. (Docket no. 16 at 18-26.) SSR 02-1p classifies individuals with regard to obesity by considering their Body Mass Index (BMI). SSR 02-1p, 2002 WL 34686281, at *2 (Sept. 12, 2002). Individuals with a BMI greater than or equal to 30 are considered "obese," with those at or above a BMI of 40 having the most "extreme" type of obesity with the greatest risk for developing obesity-related impairments. *Id*. In evaluating the effects of obesity, SSR 02-1p "does not mandate a particular mode of analysis," but it does "direct[] an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009)

6

(citation and internal quotation marks omitted). "Regarding a claimant's residual functional capacity, the Ruling provides: 'As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations.'" *Sleight v. Comm'r of Soc. Sec.*, 896 F.Supp.2d 622, 631 (E.D. Mich. 2012) (Michelson, M.J.) (quoting SSR 02-1p, 2002 WL 34686281, at *7).

At the hearing, Plaintiff testified that she was 5'5" tall and weighed 284 pounds. (TR 29-30.) Those statistics depict a BMI of 47.3, or "extreme" obesity. *See* National Heart, Lung, and Blood Institute, "Calculate Your Body Mass Index," https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm (visited May 16, 2018); SSR 02-1p, 2002 WL 34686281, at *2. At step two of the sequential evaluation process, the ALJ found that Plaintiff's obesity was a severe impairment. (TR 12.) The ALJ then devoted a paragraph to Plaintiff's obesity in his discussion of Plaintiff's RFC:

> Claimant is somewhat obese, and I considered how weight affects the ability to perform routine movements and necessary physical activity within the work environment. I am aware that obesity often complicates existing medical problems, and that the consequences of this condition may not be readily apparent. The combined effects of obesity with other impairments may be greater than might be expected without the disorder. I examined any added and accumulative effects this condition played on her ability to function, and to perform routine movement and necessary physical activity within the work environment. In spite of her weight, clinicians observed claimant ambulate without an assistive device and to retain functional range of motion. Claimant's neurological functions in terms of motor power were largely intact, and her musculoskeletal and extremity reviews were commonly free of deformity, clubbing, cyanosis, edema, heat, discoloration, ulceration, diminished pulsation or atrophic changes.

(TR 18.)

With regard to this paragraph, Plaintiff argues, "[i]n spite of the medical records from the treating physicians chronicling Ms. Royalty's level of extreme obesity and the ALJ finding that it

7

was 'severe' at Step 2 . . . he continues in explanation to consider it's [sic] effects on plaintiff's ability to function and holds that it is nonsevere." (Docket no. 16 at 18 (citing TR 12, 18).) Plaintiff then makes several ambiguous and contradictory arguments, like "[a] recognition of the effects of this severe impairment are absent from the decision;" [o]besity was found to be a severe impairment and its effects on plaintiff's RFC was not analyzed, only lip service to SSR 02-01p;" "[n]o such analysis [under SSR 02-1p] was performed by the ALJ, he simply ignored the severe effects of plaintiff's obesity after commenting he understood the need to analyze it;" and "[i]n assessing plaintiff's residual functional capacity the Administrative Law Judge failed to consider obesity and it's [sic] known effects on a person's ability to endure and its additive effects to pain and depression." (*Id*. at 18, 19, 20, 21.) Each of these four arguments contradicts Plaintiff's first-cited argument in which she admitted that the ALJ considered the effect of obesity on her ability to function. For this reason, it is difficult to discern what Plaintiff's claim of error actually is in this regard.

To the extent that Plaintiff argues that the ALJ failed to explicitly enumerate the severe effects of Plaintiff's obesity in his decision or that the ALJ improperly determined that the effects of Plaintiff's obesity were non-severe, Plaintiff's argument lacks merit, because Plaintiff herself fails to explain what those severe effects are. Indeed, Plaintiff asserts that "[o]besity is a significant contributing factor to the effects of other impairments, such as depression and back pathology" and that the ALJ "failed to consider obesity . . . and its additive effects to pain and depression." (Docket no. 16 at 19, 21.) But despite these general assertions, Plaintiff does not explain or describe what effects, if any, that her obesity has had on her depression, the pathology of her degenerative disc disease, or any of her other impairments. More importantly, Plaintiff provides no explanation regarding how her obesity affects her RFC, and she does not indicate

8

what additional functional limitations the ALJ should have assessed to accommodate for her obesity. *See Smith v. Astrue*, 639 F. Supp. 2d 836, 846 (W.D. Mich. 2009) (SSR 02-1p "does nothing to relieve [a claimant] of the burden of marshaling competent medical opinion[s] and evidence to show *specifically* how her obesity exacerbated her other impairments, or interacted with them, to render her incapable of all suitable work.") (emphasis in original); *see also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (noting that the claimant bears the burden of proving the existence and severity of limitations caused by her impairments through step four of the sequential evaluation process). Plaintiff has not met her burden here.

As previously noted, Plaintiff also argues that the ALJ erred by failing to consider her obesity in accordance with SSR 02-1p at step three of the sequential evaluation process. (Docket no. 16 at 20, 24-26.) Specifically, Plaintiff argues that the ALJ failed to consider Plaintiff's obesity in determining whether Plaintiff's impairments met or medically equaled Listing 1.04A, and he "reversibly erred by failing to consider whether the claimant's obesity equals a listing in light of the claimant's difficulty ambulating, her herniated disc and severe back, leg and knee pain and her positive straight leg raising test." (*Id*. at 24 (citing TR 63, 286).)

SSR 02-1p provides that an ALJ will find that an individual with obesity meets the requirements of a listing if he or she has another impairment that, by itself or in combination with obesity, meets the requirements of a listing. SSR 02-1p, 2002 WL 34686281, at *5. An ALJ "may also find that obesity, by itself, is medically equivalent to a listed impairment . . . if the obesity is of such a level that it results in an inability to ambulate effectively." *Id*.

Under Listing 1.04A, disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) are defined as those:

9

> resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
>> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.04. For a disorder of the spine to meet Listing 1.04A, "the simultaneous presence of all of the medical criteria in paragraph A must continue, or be expected to continue, for a continuous period of at least 12 months." Social Security Acquiescence Ruling (AR) 15-1(4), 80 FR 57418-02, 2015 WL 5564523, at *57420 (Sept. 23, 2015) (citing 20 C.F.R. §§ 404.1525(c)(4), 416.925(c)(4)). Stated differently, when the paragraph A criteria "are scattered over time, wax and wane, or are present on one examination but absent on another, the individual's nerve root compression would not rise to the level of severity required by listing 1.04A." *Id.*

Here, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments, and specifically, Listing 1.04:

> I do not find, as argued by counsel, that claimant satisfied mandated criteria in Section 1.04 of the listed impairments. As discussed, claimant had one imaging study conducted prior to her alleged disability onset showing a degree of nerve root insult. However, no subsequent evaluations demonstrated such. Moreover, claimant did not consistent[ly] manifest evidence of a of [sic] associated neurogenic compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, and required neurological sequelae. Claimant's motor strength was good; she did not exhibit notable atrophic changes, and during the period at issue, straight leg raise testing was typically normal. Claimant did not have evidence of spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy or by appropriate medically acceptable imaging, and did not displayed [sic] spinal stenosis resulting in pseudoclaudication manifested by chromic nonradicular pain and weakness and resulting in inability to ambulate effectively.

(TR 16-17.)

Plaintiff argues that her back condition meets Listing 1.04A because she was diagnosed with stenosis and degenerative disc disease due to loss of motion in her lumbar spine, muscle spasms, and pain that radiated down her left leg. (Docket no. 20 at 4.) In support of this argument, Plaintiff cites the results of MRI and straight-leg raising tests administered in April 2012, prior to the alleged onset date of disability. (*Id*.) She also asserts that the pain caused by the nerve root impingement and stenosis revealed in that MRI has limited her ability to ambulate effectively. (*Id*.) Plaintiff further asserts that her obesity imposes "great burdens" on her ability to walk and her endurance, adds to her lack of stamina, and increases the effects of her pain. (Docket no. 16 at 20.) Plaintiff asserts that she can only walk one-quarter of a block, which she equates to "ineffectual ambulation." (*Id*. at 26.)

Seemingly, Plaintiff contends that her obesity and degenerative disc disease meet or medically equal a listing because they affect her ability to ambulate effectively. But an inability to ambulate effectively is not one of the medical criteria required to meet Listing 1.04A. Moreover, Plaintiff does not demonstrate that she experienced the simultaneous presence of all of the medical criteria in Listing 1.04A for a continuous period of at least 12 months during the alleged disability period. Additionally, Plaintiff relies on her hearing testimony and the letters submitted by her daughters to support her assertion that she cannot ambulate effectively. The ALJ, however, discounted Plaintiff's testimony and the comments made by Plaintiff's daughters, and he relied on medical record evidence to reach the conclusion that Plaintiff's impairments did not result in an inability to ambulate effectively, *e.g.*, the ALJ noted that Plaintiff's gait and heel-to-toe walking were normal and unaided in July 2015.[1] (*See* TR 15, 16-17.) The ALJ's

---

[1] The ALJ found that the comments made by Plaintiff's daughters were not persuasive or entitled to significant weight. (TR 19.) Plaintiff challenges this finding for the first time in her reply brief. (Docket no. 20 at 6-7.) Such

conclusion regarding Plaintiff's ability to ambulate is therefore supported by substantial evidence, and if the Commissioner's conclusion is supported by substantial evidence, it must be affirmed, even if substantial evidence also supports the opposite conclusion. *See Her*, 203 F.3d at 389-90; *Mullen*, 800 F.2d at 545 (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). For these reasons, Plaintiff's argument regarding the ALJ's consideration of Plaintiff's obesity at step three of the sequential evaluation process fails.

Plaintiff's arguments regarding the ALJ's consideration of Plaintiff's obesity also fail because the Sixth Circuit has found that an ALJ does not need to explicitly "mention [] obesity if he credits an expert's report that considers obesity." *Coldiron v. Comm'r of Soc. Sec.*, 391 F.App'x 435, 443 (6th Cir. 2010) (citing *Bledsoe v. Barnhart*, 165 F.App'x 408, 412 (6th Cir. 2006)). Here, the ALJ accorded "a good deal of weight" to the opinion of Quan Nguyen, M.D., the non-examining state-agency physician that conducted the initial disability determination. (TR 18.) On August 27, 2014, Dr. Nguyen acknowledged that Plaintiff had a history of obesity with a BMI of 48, but he found that Plaintiff was able to perform a limited range of light work. (TR 81-82.) This credit alone satisfies the Sixth Circuit's precedent. For the reasons stated above, the undersigned finds that the ALJ adequately considered Plaintiff's obesity in accordance with SSR 02-1p, *Bledsoe*, and *Coldiron*, and recommends that Plaintiff's Motion for Summary Judgment on the basis of the ALJ's consideration of Plaintiff's obesity be denied.

### 2. *The ALJ's Assessment of Plaintiff's Credibility*

Next, Plaintiff argues that the ALJ's credibility assessment is not supported by the substantial evidence of record. (Docket no. 16 at 26-28.) "[A]n ALJ's findings based on the

---

a challenge is procedurally improper, and it will not be considered. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008); *U.S. v. Perkins*, 994 F.2d 1184, 1191 (6th Cir. 1993).

credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p.[2] "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "[T]he adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). The ALJ will consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for symptom relief, (6)

---

[2] SSR 96-7p has been superseded by SSR 16-3p, effective March 28, 2016. *See* SSR 16-3p, 2016 WL 1119029, at *1; 2016 WL 1237954. Nevertheless, because the ALJ's decision in this matter was rendered prior to the effective date of SSR 16-3p, the ALJ was obligated to comply with SSR 96-7p. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) ("The Act does not generally give the SSA the power to promulgate retroactive regulations.")

any measures used to relieve the symptoms, and (7) functional limitations and restrictions due to the pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p; *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

In this case, the ALJ considered and discussed Plaintiff's hearing testimony and her other subjective complaints in conjunction with the record evidence, and the ALJ found that Plaintiff's allegations were "not entirely credible." (TR 17.) The ALJ then provided the following discussion regarding Plaintiff's credibility:

> Significantly, no physician imposed a work preclusive limitation on claimant's functioning, or opined that she was disabled. This is not to suggest claimant does not have legitimate impairment and limitation, but rather, that these are not of a scale to conclude she is incapable of sustained work activity within the confines of the residual functional capacity (RFC) defined. I note results of aforementioned MRI, CT, CT angiogram, radiographic, serology, colonoscopy, myocardial perfusion, lung ventilation/perfusion scanning, and clinical evaluations, which do not reveal completely debilitating pathology. Spinal imaging studies were negative for malalignment, cord amputation or operative lesion. Chemistry studies did not reflect primary muscle, autoimmune, or other underlying systemic disorder. Claimant's blood pressure and diabetic conditions did not result in hypertensive/diabetic retinopathy, jugular venous distention, carotid bruits or renal failure. Objective work-ups showed no ischemic response, myocardial infarction or wall motion aberration. Gastrointestinal evaluations were negative for persistent nutritional deficiency, abdominal distention, ascites, obstruction or other serious complicating features.
>
> . . . .
>
> The record does not fully support claimant's contentions as to the magnitude of her symptomatology and dysfunction, including her expressed level of pain and fatigue and reported need to take breaks and to rest for extended intervals on most days. Claimant reported that certain of her medications caused diarrhea, however, the evidence does not disclose serious pharmacology engendered side effects. Within testimony or the written record, it was reported that claimant performed certain self-care tasks, prepared simple and convenient meals, assisted with light household cleaning chores, folded clothing and washed dishes, drive [sic] for short distances, shopped, occasionally camped and crocheted, enjoyed time with family and a few friends (Exhibits 4E, 4F and testimony).

(TR 17-18.)

Plaintiff argues that the ALJ misconstrued Plaintiff's daily activity level and her medical records and underestimated the effects of Plaintiff's pain to justify his credibility findings. (Docket no. 16 at 26-28; docket no. 20 at 6.) To support this argument, Plaintiff cites to the transcript of her hearing testimony, which reflects that she testified to having about four bad days per month, mostly due to rainy weather, on which days she didn't do anything besides lie in bed, take her medicine, and eat. (TR 62.) Plaintiff also testified that she went grocery shopping "[o]nce in a while but not very often" and that she pretty much stayed at home except for medical appointments. (TR 63-64.) She further testified that she could no longer crochet because her fingers ached. (TR 64.) The ALJ's discussion of Plaintiff's activities of daily living, *supra*, is not inconsistent with this portion of Plaintiff's testimony, except for Plaintiff's assertion that she no longer crochets.

Moreover, the ALJ's discussion of Plaintiff's activities of daily living is consistent with the statements that Plaintiff made in her Function Report regarding the same. (*See* TR 206-13.) Notably, Plaintiff stated that she did not need assistance with personal care except for putting on her left sock and shoe; she prepared quick and easy meals for herself on a daily basis; she folded clothes and washed dishes, but the dishes took her some extra time; she drove for short distances; she grocery shopped about two times per month, using a cart for assistance; and she crocheted despite her hand pain. While the ALJ did not summarize Plaintiff's activities of daily living with as much detail as Plaintiff provided in her Function Report, it is evident that the ALJ did not misconstrue or mischaracterize Plaintiff's activities in his decision. Plaintiff's argument fails in this regard.

Plaintiff also argues that the ALJ's recitation of the medical record does not support his credibility finding because he only cited evidence where Plaintiff was examined sporadically

15

without medical findings that would support any kind of impairment. (Docket no. 16 at 27.) On the contrary, Plaintiff argues, the medical record is replete with evidence that supports her credibility. (*Id.*) Plaintiff does not cite any specific medical evidence in support of this argument; instead, she refers to the medical evidence that she summarized in the Factual Background portion of her brief. (*Id.*) A plain but careful comparison of the medical evidence recited by Plaintiff and the medical evidence recited by the ALJ, however, reveals that the ALJ considered and recited most, if not all, of the same evidence cited by Plaintiff. (*Compare* docket no. 16 at 6-11 *with* TR 12-15.) Accordingly, Plaintiff's argument lacks merit.

Lastly, Plaintiff argues that the ALJ overlooked the fact that Plaintiff took strong pain medications like Neurontin and Tylenol 500, engaged in physical therapy, and received injections to deal with her pain. (Docket no. 16 at 27-28.) Indeed, the ALJ did not explicitly discuss the medications that Plaintiff took to relieve her pain. But "it is well settled that '[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" *Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 507-08 (6th Cir. 2006) (quoting *Loral Def. Sys.-Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir. 1999)). Additionally, the ALJ did acknowledge that Plaintiff was taking medication by reciting Plaintiff's contentions that her symptoms were only partially allayed with medication and that certain medications caused her to suffer diarrhea. (TR 17, 18.) Furthermore, contrary to Plaintiff's assertion, the ALJ explicitly noted that Plaintiff engaged in a short course of physical therapy and that she received injections in her left knee. (TR 14.) Plaintiff's arguments are unavailing.

The above discussion demonstrates that the ALJ set forth legitimate reasons for discrediting Plaintiff's hearing testimony and subjective complaints in his decision, many of

which apply the factors set forth in 20 C.F.R. § 404.1529(c)(3) and are properly supported with citations to the record evidence in accordance with SSR 96-7p. Thus, the ALJ's decision is sufficiently specific to make clear to Plaintiff and to the court the weight that he gave to Plaintiff's statements and the reasons for that weight. The ALJ's assessment of Plaintiff's credibility is supported by substantial evidence and should not be disturbed.

## VI. CONCLUSION

For the reasons stated herein, the court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 16) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 19).

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated:  May 17, 2018                s/ Mona K. Majzoub
                                    MONA K. MAJZOUB
                                    UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated:  May 17, 2018                s/ Leanne Hosking
                                    Case Manager